For over 40 years, dozens of federal courts have heard hundreds of Section 2 claims brought by private plaintiffs, including at least 10 in the Supreme Court and at least 18 in this Court. In that time, not once has a court denied private plaintiffs their day in court because of a lack of a private right of action under Section 2. How many times has that been directly challenged in those cases you just cited? We cite in our briefs examples of at least 10 in our initial brief, and then there are another case out of the District Court in Louisiana that we cite in our reply brief, and just recently there was a District Court decision out of the Northern District of Georgia that we cite in our 28-day letter. So those are examples. In every of those cases, the Court concluded that there was indeed a private right of action to enforce Section 2. Now, were any of those Eighth Circuit or U.S. Supreme Court decisions that actually directly had that issue before them and decided it the way you suggest? Your Honor, we would submit that in the Roberts v. Ramser case in front of the Eighth Circuit, that the Court did determine ultimately that private actors, private individuals who have their voting rights violated could maintain an action under Section 2 in order to vindicate that right. We submit that that decision from a panel of this Court is binding on this Court and is a way to resolve this appeal. In addition, five justices of the Supreme Court in Morris v. Republican Party of Virginia determined that there is a private right of action to enforce Section 2 of the Voting Rights Act. And that too, because the justices there relied upon the existence of a private right of action to enforce Section 2 in holding that there is also a private right of action to enforce Section 10, that reasoning is part of the holding of this case and likewise would resolve this appeal. You don't think that's, I mean, I think you're making broad claims there. You don't think that's dicta? I mean, if you say, you know, we seem to have recognized the cause of action under Section 2 and Section 5 and therefore we're going to recognize it under Section 10. The only holding there is that Section 10 is, there's a cause of action under Section 10. Am I wrong about that? I mean, it's certainly there's the assumption that's made, but I'm not sure that that's necessarily binding on us. It's very learned dicta. No question about that, but I'm not sure it's binding. Well, Your Honor, respectfully we would submit that whatever that court relies on in order to reach the conclusion that there is a private right of action here under Section 10 in the Morris case is part of the ultimate holding of that case. That is why the three-judge panel in the Milligan case out of Alabama determined and said that, as the Supreme Court itself has noted, that that reasoning that allows a court to reach a conclusion is part of the holding and therefore is the holding and binding of the court. But even if this court believes that what five justices of the Supreme Court said about the existence of a private right of action under Section 2 is dicta, we still submit that that should be afforded significant weight here. And that is especially true not just because it is Supreme Court dicta, but because it is consistent with what every other source of authority here says and tells us about whether Congress intended a private right of action here. You cited Wamser. Isn't it also dicta in Wamser in the sense that in Wamser the ultimate holding was that the losing candidate was not an appropriate Section 2 party? That may have an underlying assumption that there is a private right of action under Section 2, but I'm dubious as to whether that's a holding. Your Honor, the court, in order to reach its conclusion that unsuccessful candidates were not aggrieved parties who could sue under Section 2, it first had to determine who were aggrieved parties. And in fact, the language of Roberts itself says that we hold that only individuals whose voting rights have been violated have the ability to sue under Section 2. And that determination, which the court did not indicate in any way was an assumption, was again necessary to the ultimate conclusion that unsuccessful political candidates whose voting rights had not been so violated were not aggrieved parties with the ability to sue under the Act. But the question of whether there was any private right of action wasn't squarely presented in that case, was it? The court addressed in its own words whether or not the Voting Rights Act provided an opportunity for unsuccessful candidates to maintain a judicial action to challenge discriminatory voting procedures and ultimately answered that question. That was the question that the court was itself, as it characterized, answering. And so in answering that question, it was answering the question of who can maintain a Section 2 private right of action and concluded that only individuals whose private rights, whose voting rights had been violated, had the ability to bring an action under Section 2 and unsuccessful candidates could not. But again, each of these decisions, Morris, Roberts, all of them are consistent with the weight of authority here that demonstrates that there is a private right of action under Section 2. Suppose that we conclude that it sticked, and I want to follow up on Judge Grunder's point, which is then what do we do about the fact that about for the last 10 to 15 years, the Supreme Court has been absolutely crystal clear, has reversed numerous courts that have found implied Bivens actions, implied cause of actions under other statutes, and then the Alexander v. Sandoval decision is very clear about what you need in order to find a cause of action. Do we ignore that and just go back to this Learned Dicta and kind of pretend that the last 15 or 20 years doesn't happen, or how do you suggest we approach that? Well, Your Honor, I would say that Sandoval doesn't say that we need to revisit every single case beforehand. It lays out a framework for understanding whether or not ascertaining whether or not there's a private right of action to maintain under Section 2, and we would submit that the Roberts case is actually not inconsistent with the Sandoval decision. It very much is focused on what Congress intended and looks to the text, Section 3 and who was aggrieved parties, in order to answer that question. So while Sandoval does say that this is the analysis that we should do going forward, the Roberts definitely is consistent with that, but in addition, even if we were to consider the text and structure of the Voting Rights Act in Section 2 in the first instance, we would find that it satisfies the Sandoval two-part test. Section 2 clearly sets forth, in plain terms, a private right. It states that it squarely protects against the denial or abridgment of the right of any citizen of the United States to vote. As the North Dakota District Court recently stated, it's difficult to imagine a more explicit rights-creating language. Section 2, along with Sections 3 and 14e, together demonstrate that Congress intended that there is a private remedy to enforce and to vindicate that right. Well, I don't disagree with you, actually. I think the rights-creating language is probably fine under the Sandoval decision. I think where you run into problems is whether it unambiguously creates a Section 2 claim, because it doesn't refer to Section 2 at all in Section 3. It says, to enforce the voting guarantees of the 14th or 15th Amendment, and then moves on. That has three plausible interpretations. One is to enforce the 14th and 15th Amendment vote dilution claim line of analysis. Another is what Justice Thomas said in his Morse dissent. And a third is your interpretation. So I guess my question for you is, how does this unambiguously create a cause of action for a Section 2 violation? We are able to at least, if there's any ambiguity in testing, we would submit that there isn't. At least two of those readings, if not all three of these readings, actually point in the same direction. And that's because, at least with respect to Section 3, there is a private right of action under Section 2. And if there's any doubt about that, then of course we would take a look at the legislative history. That is a normal statutory construction that Sandoval doesn't overturn, and the legislative history here is quite clear. But looking at the text of Section 3 itself, it says, as you know, that the private remedies of Section 3 apply to a proceeding under any statute to enforce voting guarantees of the 14th and 15th Amendment. And I'd like to point to the phrase, under any statute here. As the Supreme Court explained in Barnhart, a limiting clause should be that it's modifying the noun or phrase that it follows immediately. Here in the text of Section 3, the limiting clause to enforce the voting guarantees of the 14th and 15th Amendment immediately follows the word statute, not proceeding. And so the question is whether the statute enforces the voting guarantees of the 14th and 15th Amendment, not whether the proceeding does. And here, Section 2 enforces the voting guarantees of the 14th and 15th Amendments. Now, even putting aside and accepting the defendant's reading of the statute, a proceeding under Section 2 is a proceeding to enforce the voting guarantees of the 14th and 15th Amendment. And that is because the very purpose and function of Section 2 is to, as the Supreme Court has recognized in Hibbs, City of Birmingham, most recently in the Vernovich decision, to remedy and deter unconstitutional conduct. And so in 1982, when it amended Section 2, it did so against the backdrop of unconstitutional conduct that, in the words, as Vernovich recounts, called for legislative redress. And Congress responded, under its enforcement powers, by amending Section 2 to adopt a standard of liability that incorporates those factors that are similar to circumstances that the Supreme Court deemed primitive of unconstitutional conduct, but, as the Ninth Circuit explained, did not put federal judges in the position of having to label public officers as racist. The nature of the claims are different. And I know this because I've had to sit on a three-judge redistricting panel. The Jingles claims are sort of more of a, they're just different. They're proven in a completely different way, a majority-minority district, whereas a 14th or 15th Amendment claim is proven with discriminatory intact. And so I just wonder, again, whether that 14th and 15th Amendment language limits the possible, narrows the field of possible things to which it could be referring. It refers, Your Honor, it refers, it limits it only in the sense that we're talking about those statutes that are designed for the enforcement of the voting guarantees of the 14th and 15th Amendment. We're not talking about other types of actions here. And Congress, and that textual analysis is consistent with the lead opinion in Morris that asked that question, whether a statute is designed to enforce the voting guarantees of the 14th and 15th Amendment. That is the textual analysis that they have, that they adopted there. And that is, again, precisely what Congress did under its powers to enforce the voting guarantees by proper legislation. I'd like to reserve the remaining of my time for rebuttal. You may do so. Mr. Bracker. Thank you, Your Honors. And may it please the Court, Jonathan Bracker for the United States. Sorry, Jonathan Bracker for the United States. So at the outset, I want to say that the issue of whether Section 2 is privately enforceable never should have come up in this case, because it's not a jurisdictional question. But if this Court reaches the question of whether it is privately enforceable, the answer is clear. Yes, it is. And there are three equally viable routes that this Court could take to get to that conclusion. First, which my colleague talked about at length, is the precedent. Second, if this Court applies the Sandoval framework, there are numerous different textual hooks that get to that conclusion, as well as the ratification history. Would you address how we should treat Sandoval in our analysis? Yes, absolutely, Your Honor. So I think there's a Sandoval step zero inquiry, which is, is reasoning of other earlier cases, does it dictate the outcome here? And Sandoval said that there's no question that Section 601 of Title VI is privately enforceable because of the reasoning of earlier cases. Canon, which itself relied on a Fifth Circuit case construing Title VI as having a private right of action, which had been ratified by Congress over time. That's very similar here in terms of the reasoning of Allen and then Morse and the repeated, you know, recodifications of the Voting Rights Act, without the Congress ever suggesting that there was not a private right of action. Indeed, saying specifically in the 1982 Senate report that Congress has always intended private enforceability since 1965. But to the more traditional parts of the Sandoval framework, my colleague talked about Sections 3 and 14E, which, you know, I think the sequence of events are really important to understanding what Congress's intent was in 1975 when it added the words aggrieved person and prevailing party under the United States to the statute. That was, of course, post-Allen, when Allen said that private plaintiffs can bring Voting Rights Act claims in the context of Section 5 because the laudable goal of ensuring that the 15th Amendment's protections finally were realized would be undermined if private plaintiffs did not have the ability to bring Voting Rights Act claims. So again, that was restricted to Section 5, but the reasoning encompasses all of the Voting Rights Act's substantive provisions. And then when Congress amended the Voting Rights Act in 1975, it said, we agree, and then included new language that clearly contemplated private plaintiffs bringing claims under the Voting Rights Act, including Section 2. What do you make, though, of the fact that there's an explicit cause of action in favor of the Attorney General, but not an explicit – I think it's fair to say non-explicit cause of action. You have to go to other provisions and kind of read into it. Yeah, certainly there's not an expressed private right of action under the Voting Rights Act. I think the reason is because voting rights are traditionally thought of as private rights. And if you look back to the history of Voting Rights Act legislation in the Reconstruction era, the voting rights statutes were only enforceable by private plaintiffs. And in 1957, Congress added a public right of action in the Civil Rights Act of 1957 so that the Attorney General could assist in that effort, but didn't mean to withdraw what had always been the case, that private plaintiffs can come to court to vindicate their right to vote under the statutes that Congress has codified. It would be odd if in expanding voting rights in the 1964 Civil Rights Act, and then in the Voting Rights Act itself, that Congress meant to cut back on private enforcement of voting rights statutes when, quite the contrary, it's quite clear from both the text of the statute and the legislative history and the ratification history that Congress always intended private enforcement of voting rights statutes, and specifically Section 2. Does Alexander v. Sandoval require it to be more explicit, though? I mean, are we able to read the tea leaves and say, well, these aggrieved person references throughout other provisions is good enough to create the cause of action? Well, Sandoval, of course, doesn't require an express private right of action, or we wouldn't need this whole framework for determining whether there is an implicit private right of action. Ordinary tools of statutory interpretation govern here. As we've discussed, tons of textual evidence of Congress's intent to have private enforceability of the statute, and it's confirmed by the ratification history and certainly by the 1982 Senate report, which the Supreme Court in jingle said is the authoritative source of Congress's intent when it comes to Section 2. Confirm that. So there are many roads, but they all lead to Rome. They all lead to the conclusion that Section 2 is privately enforceable. And I should add that one of the routes that I didn't mention earlier is 1983, which I just want to say that if this court does not think that there is an implied private right of action to enforce Section 2, then it should remand the district court for the plaintiffs to have their right to amend their complaint to bring a 1983 claim so that this court can decide together whether or not either there is an implied private right of action under Section 2 or whether the statute is enforceable under 1983. In the seconds you have left, would you address the waiver question? Sure. So I think that this issue was waived because defendants didn't raise the private right of action. And the Supreme Court's holding in Steele Co. coupled with this court's holding in Charleston Housing Authority showed that private right of action questions are not jurisdictional. And Cross really isn't inconsistent with that. Defendants raised private right of action in Cross and framed it as a jurisdictional issue. And this court said that there was not a private right of action and adopted that framing as a jurisdictional issue. But it wasn't an instance where a court reached out like the district court here did and said, sui sponte, I'm going to raise this private right of action question. So Cross really isn't inconsistent with that binding authority. Why can't it raise it so long as it gives notice, which it did in this case, right? It could if it were a jurisdictional issue. But the district court can't dismiss a case sui sponte on a non-jurisdictional issue. Even if it gives notice and gives the parties a chance to brief? I'm not familiar with how a court could sui sponte raise an issue and dismiss on those grounds, no. Follow-up question, if I can, Chief. I was under the same impression as Judge Grunder, but I think there's another issue with your waiver argument, which is that there's a request for a preliminary injunction. And the main thing is probability of success on the merits. And I don't know how you could possibly figure out what the probability of success on the merits is without figuring out if there's a cause of action first. Fair enough. And I think the issue here is the dismissal. Because plaintiffs as of right, if the motion to dismiss were filed, right, plaintiffs as of right would have had an opportunity to amend their complaint and bring the claim under 1983. I mean, Your Honor mentioned that the right's creating language. It couldn't be clearer here. And so 1983 clearly is a viable route to bring a Section 2 claim. So the problem here is it's really procedural. The plaintiffs never got their opportunity to amend as of right in this case because of the way the district court raised the issue. And so it's really the dismissal that is the problem here. Thank you, Your Honors. Thank you, Mr. Baskin. Mr. Brani. Hey, it pleases the Court. On its face, Section 2 provides no right to sue and plaintiffs don't suggest otherwise. In fact, the only provision, as Judge Strass mentioned earlier, that mentions Section 2 enforcement is Section 12. And that provision only mentions suits by the Attorney General. So to find a private right of action, as plaintiffs just articulated, they have to go looking elsewhere. And they purport to find private enforcement lurking in other provisions of the VRA, indicative from previous cases and based upon assertions about how to make the VRA, in their view, more effective. Well, things aren't lurking when they've been around for 50 or 60 years. I think your position is that there's been a change, that now the Supreme Court is inclined to view private rights of action differently and this might be one of those that they might be inclined to conclude isn't really a part of the legislation. I think, Your Honor, what I would say because I will ask you, is there a Supreme Court case that has concluded that there is no private right of action in a Section 2 claim? I think that's the wrong question to ask, Your Honor. Is there an Eighth Circuit case that has made that decision that we would be bound by? There is neither an Eighth Circuit case nor a Supreme Court case that holds that Section 2 is privately enforceable. That means this is an open question. It's been an open question since the Court raised it in Bolden when the Court said it was just going to assume that Section 2 would be privately enforceable. The Court, since then, has never revisited that issue in a Section 2 case and squarely addressed that issue. But the Court clearly has, over the years, at least for purposes of the specific issues before it, assumed there was. I absolutely agree, Your Honor. The Court has assumed, other courts have assumed, they've alluded, as the exchange earlier highlighted, to several cases where the Court, yes, has assumed that Section 2 is privately enforceable. So would we be in the position of getting ahead of the Supreme Court, in a sense, and reading their tea leaves and saying what they would do in making this decision to declare now that there's no private right of action? The Supreme Court has made clear that it's prerogative to determine its overruling of its prior precedent. So I would agree, Your Honor, if we were actually overruling prior precedent. But the point at the end of the day is there are assumptions. The Court has assumed things. Other courts have assumed things. But assumptions are not holding, and assumptions are not binding on lower courts. Instead, holdings are binding. And again, they don't cite a Section 2 case, a holding by the Supreme Court that says Section 2 is privately enforceable. Now, as to the question of, you know, which approach to apply, I think Your Honor was asking about sort of the transition from the Borak line of cases where the Court viewed its role as reading things into statutes, reading private causes of actions into statutes to make the language that Congress wrote more effective than the language that Congress actually wrote. The Court has moved away from that. The Court began moving away from that even in the 1970s and 1980s. But in 2001, there is a very clear break from the Supreme Court, and it says that's not the approach we apply. Instead, we apply Sandoval. We ask whether or not Congress unambiguously conferred a private right of action. That's the case law that's out there. And on an open question like this, where the Court has only assumed in the past that there is a private right of action, it assumed it in Bolden, and it didn't revisit it and hasn't revisited it since, when squarely confronted with that issue, as you are here, the test that we apply today is Sandoval. And applying Sandoval, I think essentially the other side largely tips its hand by focusing so much on the dicta and mores, really underscores that if Sandoval is the test, they can't prevail. Let's explore whether it's dicta and mores. Justice Stevens and Breyer's statements about Section 2, weren't they necessary to reach the conclusion with respect to Section 10? And if not, why not? So I would begin with the proposition that it's a Section 10 case. It's not a Section 2 case. So references to other sections generally aren't going to be treated as holdings, because, again, it's a Section 10 case. But if it's necessary to the holding, then it could be binding, right? The reasoning, I would actually argue that in that case, Your Honor, it's probably still dicta. But even assuming Your Honor was correct that we treat them as a holding, what I would say is I don't actually think that it's necessary for either one of them. I think in both cases, really the logic that's getting applied there is that Allen is controlling. And under Allen, certainly this is more true, I think more obviously true for Justice Breyer and the two other justices who are with him, that if we apply Allen's line of reasoning, where, again, the Court viewed its role as making statutes more effective than what Congress wrote, then under Allen, he's suggesting that Section 2, just like Section 5, and the holding in that case, Section 10, would be privately enforceable. But, again, that's a suggestion. For Justice Stevens, it's a slightly different analysis. Allen apparently is not sufficient enough on his view. Instead, you need Allen plus Sections 3 and 14 in order to reach that conclusion. So that's a different analysis that's getting applied. But it's still a suggestion. Again, it's not a holding because it's not a case that actually concerns Section 2. So I think it remains an open question. And I think that's why you have two justices, Justice Thomas and Justice Gorsuch and Brnovich, highlighting that this remains an open question. I'd also add that in Morse, Justice Thomas noted for himself and three other justices that the Court may have inadvertently assumed in past cases that Section 2 was privately enforceable, but the Court had never held that. And I think that's Justice Thomas highlighting once again that this has remained an open question since Bolden. Do you think in these past cases that, and do you know whether or not the issue of whether it existed was ever raised? So it's one thing if the Court addresses it. But it's another thing if the parties raise it and then address it in the course of the decision as well. Do you know whether it was raised in these other cases? In the context of Section 2, I don't believe that's the case. I'm not 100 percent sure that, having read all the briefs, there's a possibility that somebody referenced it. But I don't believe that's the case, no, Your Honor. And it's the same thing for the lower court proceedings that they're relying on. I mean, most of those cases, again, involve assumptions about Section 2 being privately enforceable as opposed to the issue being squarely presented and addressed. Even the ones that they point to that would strongly suggest of those lower court cases, it's usually the analysis is a line. It's not really the kind of analysis that's required to understand it all, about whether or not Congress unambiguously conferred a private right of action. And so I would then turn, because I think the reliance on precedent really falls apart. It's certainly the reliance on Morse because there's no holding there. As for Roberts, you know, I think as Judge Grunder was essentially asking, the holding in Roberts is essentially that an aggrieved person, for purposes of Section 3, means voter. It does not mean an unsuccessful candidate. Anything that Roberts said beyond that is the definition of dicta. Once you've decided you're not an aggrieved person for purposes of Section 3, the analysis ends. Any argument about Section 3 making Section 2 privately enforceable simply is not an argument you need to address at that point. But even if you thought that you could somehow read that dicta as being a holding, that's where Sandoval comes in. Sandoval postdates Roberts, and Sandoval has made very clear that the approach that we apply is not the approach that the dicta in Roberts points to, the Allen line of cases where, again, we read things into statutes to make them more effective. And applying Sandoval, again, there's no unambiguously conferred right here. So for that reason, they can't really rely on Morse. So that's all the precedential arguments. Next on the text itself, you know, I think their argument on the text falls apart first and foremost because Section 2, on its face, doesn't provide a right of action. That's the express question. It doesn't provide one. So they have to go looking elsewhere. And they look to Sections 3 and 14 primarily to find that right of action. That really fails for two reasons, or two principal reasons. First, on the text, Sections 3 and 14 only apply to proceedings under any statute to enforce the voting guarantees of the 14th and 15th Amendment. Section 2 suits don't do that. Instead, lawsuits like this, they seek to enforce Section 2's prophylactic disparate impact regime, not the Constitution itself. And just last term in Vega, I think the Supreme Court highlighted the critical difference here, where the Supreme Court held that you couldn't enforce Miranda under Section 1983. And what the Court explained is that there's a fundamental difference between violating the Constitution and violating a prophylactic measure that goes beyond the Constitution in order to protect constitutional rights. I don't disagree that Section 2 was designed to protect constitutional rights. But it goes beyond the Constitution, and they are not the same thing, just like Miranda is not the same thing as the Fifth Amendment. Counsel, would you address the appellant's ratification argument that essentially Congress has had decades to clarify its intent with respect to Section 2 and has never provided any indication that it had not approved or intended to have a private right of action? I would read that the other way, Your Honor. I would say that Congress has left this as an open issue, and Congress has never said that there is a private right of action. The standard is not, did Congress not say there's a private right of action? The standard is, did Congress unambiguously confer a private right of action? So, you know, I don't think that you can take congressional silence in the face of Bolden's explicitly reserving the question to be ratification. They make sort of, as I understand Plaintiff's argument, they make kind of two different ratification arguments. The first argument is somehow the 1975 amendments, which added the aggrieved person language in Section 3, somehow ratified a private right of action, even though the court later reserved that question in Bolden in 1980, five years later. And then in 1982, when Congress is specifically addressing amendments to Section 2, Congress didn't make any changes in the text to address the private right of action question in Section 1982's text. Instead, the only thing they did in 82 was expand the scope of liability under Section 2. Now, I understand they cite fractured committee reports, legislative history to say Congress was meaning to create a private right of action, but there are two fundamental things there. One, the committee report that they're primarily relying on is backward-looking legislative history. It's a committee report that says we now, in 1982, think in 1965 that Congress meant to include a private right of action. That's not, that's the worst kind of legislative history. The Supreme Court has told us repeatedly, you can't rely on subsequent statements by a later Congress to interpret what an earlier Congress said, when the earlier Congress said nothing about it. I'd also highlight that that committee report doesn't point to any actual language in Section 2 or elsewhere in the VRA that would purport to codify that intention. In addition to that, the mere fact that the committee reports are addressing Bolden and explicitly dealing with it shows Congress was well aware of this question about whether or not Section 2 is privately enforceable, but chose not to do anything about it. You know, they want to read that as meaning, well, Congress just decided it would be privately enforceable because Congress didn't do anything about it. I think when confronted with the court saying, we're not sure whether there's private right of action, the impetus was on Congress to say something to clarify that. We don't normally ratify changes in statutes by silence. That's an unusual argument to be making. Counsel, would you address the waiver concern that has been posed that our precedents seem to indicate, at least in large measure, that the absence of a cause of action is not jurisdictional? Well, I would say I do think it's jurisdictional. It's jurisdictional under Cross. But that having been said, I don't really know that that plays a factor in the analysis because I think as you were asking my friend from the United States, at the end of the day, the district court raised it, and the district court gave the other side notice. In fact, held a very lengthy oral argument hearing, gave them the opportunity to file a number of briefs on this issue, and they had plenty of opportunity to address it. So I don't really understand the argument that somehow they didn't have an opportunity to respond to it. And district courts do have, in this circuit at least, the ability to raise those issues sui sponte and dismiss on those grounds. I think it's Smith v. Boyd, an Eighth Circuit case that says that. As long as it's raised, they get advance notice, which they certainly got here, an opportunity to argue it and brief it. Given that, they were given an opportunity to respond to it. I would also add that at the end of the day, it really wouldn't amount to very much at the end because we obviously haven't given it up for purposes of the final merits. As Judge Strass pointed out, it was essentially a preliminary injunction hearing, and as I'm sure your honors know, in the course of preliminary injunction hearings, things are moving very fast. The one thing I would highlight is our view very early on in that hearing. We focused on the Purcell argument because it was very clear we were too close to an election, so that's where we chose to focus our time. But this is an issue that the district court was entitled to raise. Both sides were given an opportunity to address it and brief it. So I don't really understand the argument that somehow they were denied the opportunity to address it, or even worse, that somehow they didn't have an opportunity to ask for an amendment to replete under 1983, which, by the way, on that point, I would add, they chose to pursue an appeal. They didn't ask the district court for the right to amend under Section 1983. They remain free to do that today. They could file a new lawsuit citing Section 1983. Now, I think they would lose that lawsuit because I don't think they can actually bring a lawsuit under Section 1983, primarily because I don't think that Section 2 even vests a private right. This is one point where I would disagree with Judge Strauss' question earlier. The reason why I don't think it actually confers a private right is because it's not focused on the individual voter. The language, or what we look at in Section 2, is focused instead on the minority group and the minority group's preferences for particular candidates, not on the individual voter. And the way I would illustrate that best, I think, is if we look at where the court has found individual rights under Section 5 and Section 10 and contrast that with Section 2. So, whereas 2 is focused much more on the group, Section 5 and 10 are focused on the individual voter. Things that affect the individual voter, voter by voter, that would deny them the franchise. So, for instance, Section 5 talks about being unable to vote or being required to comply with unprecleared laws in order to exercise the franchise. That's something that affects the individual voter. Voter by voter, you're required to comply with something in order to vote that you shouldn't be. It's an individual right that would affect that voter's franchise, individually. Same idea for Section 10, not being required to pay a poll tax in order to exercise the franchise. It affects that individual voter, that individual voter can assess it and it impacts them directly. That is very different from Section 2. Section 2 is, again, focused on the group or the aggregate. It's the type of thing that an individual voter cannot assess and it doesn't affect them individual by individual. You know, I would highlight the fact that cases like this don't even tend to be brought, to the extent private cases are brought, by individuals. They're brought by organizations. And that really highlights just how different this is from what we typically think of as an individual right. So I don't think it would be actionable under Section 1983. It seems the statute disagrees with you because it uses the word right. I mean, it says the denial or abridgment of the right of any citizen in the United States to vote on account of race or color. That would seem to at least recognize there's a right. Well, I think that's the language in Section A, but then you get Subsection B. It says in A, as provided, I think the language is as provided in Subsection B. And the language in B is much more aggregate focused and the way courts have treated this, whether we're talking about the Supreme Court or District Courts, have treated this as an aggregate right. Something that you can only assess in the aggregate. So something like vote dilution, I'm not sure how one would measure vote dilution on an individual level. Vote dilution is measured in the aggregate. That's the only way you could determine vote dilution. And I think that highlights that it is not an individual right. I recognize that that is in some sense a more, I'll agree that's a more difficult question than the private right of action question or the remedy question because they don't have any, again, they don't have any cases that they can point to on the private right of action and there's nothing in the text that supports them. We talked a little bit about the text of 3 and 14, but I'd also add that even if you rejected that argument, although I agree with the District Court, that's the reason why those statutes don't apply to Section 2, I also would point out that Sections 3 and 14 do not confer causes of action. There's nothing in the language of those provisions that actually confers or could be read to confer a cause of action. Instead, they're just assuming that because there are causes of action under any statute to enforce the voting guarantees, somehow that means that Section 2 or the entirety of the VRA is enforceable. That's not the way we normally read that language. I think as the Supreme Court told us in Stone Ridge, for instance, a case under the Securities and Exchange Act where Congress created a regime governing any action under the Securities and Exchange Act, the Court said that language and the Congress's recognition of certain procedures under the Securities and Exchange Act suddenly privately enforceable. Instead, under Sandoval, you need something much more specific than that. I recognize there is a gap between expressed and implied, but you're going to need something much more specific than what we have here. I think indeed Sandoval, Section 601 was discussed earlier, Sandoval recognizes a private right of action under 601, but the way that Sandoval got there was to say the Court had interpreted identical language under Title IX as providing a private right of action, and then Congress abrogated sovereign immunity for purposes of Title VI, and the Court said based on those two things, there we're going to suggest that there's a private right of action for purposes of 601. That's the kind of specificity that I think is probably required, and I think the reason why that's probably the case is because they can't cite a case, they haven't cited a case post-Sandoval recognizing a private right of action for the very first time. Instead, the cases that we've relied on in this Court, both sides, are cases that reject that. Stonewage under the Securities and Exchange Act and Armstrong are the two cases that the parties have cited, and the Court refused to create private rights of action for the first time. So I think, Your Honor, or Your Honors, in conclusion, at the end of the day, this is an open question, much like, and that's the reason why Justice Gorsuch and Justice Thomas have raised it. It remained an open question after Bolden. The Court didn't return to it, and they don't point to anything in the text that provides a private right of action. So ultimately, their argument almost is, you have to imply a private right of action in order to make what Congress said more effective. But the Court long ago disregarded the idea that it was the appropriate role of courts to read things into statutes in order to make the language that Congress wrote more effective than what Congress actually wrote. I'd also add their argument that the government somehow lacks the resources to enforce Section 2. They don't really cite any basis for that. Indeed, the government's here today, and I think that highlights that the government does have the resources. The government may bring fewer cases, but as the amicus filings in support of us highlight, many Section 2 cases, the overwhelming majority, never reach a final judgment and are unmeritorious. So there may be fewer, but there's no reason to believe that the government wouldn't bring meritorious Section 2 claims, unless there are any questions. I see none. Thank you, Mr. Brown. Ms. Lakin, you're rebuttal. Thank you, Your Honor. With respect to the question of whether a Section 2 action is a proceeding to enforce the voting guarantees, I'd like to point to the fact that even Justice Thomas and Morris agreed that this applies to Section 5, which is like Section 2 prohibits conduct that is broader than the direct violations of the Constitution, and saying that this would apply to Section 5 but not Section 2 would create discordance in the language. I'd also add that the ratification argument that we have made includes 2006. The 2006 ratification, when Congress was certainly aware of Morris, the pronouncement in Morris, whether it's dicta or not, the decades of cases brought by Section 2 plaintiffs, and yet not once did it decide to correct what would be a misunderstanding of that proportion. The District Court is wrong on at least one thing. It's either wrong on jurisdiction, that's what the decades of precedent show us, or it's wrong on the merits. This Court should reverse. Thank you, Ms. Lakin. The Court thanks all counsel for your presence and participation in argument before the Court. In supplementation to the briefing that's been submitted, we'll continue to study the case and render decisions promptly as we can. Thank you.